**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RONALD RAY BELL | § | |
| and BONNIE LOUISE BELL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:19-cv-00129-ALM-KPJ |
| v. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE AMOS L. MAZZANT, III, UNITED STATES DISTRICT JUDGE:

Plaintiffs, Ronald Ray Bell ("Mr. Bell") and Bonnie Louise Bell ("Mrs. Bell") (collectively, "Plaintiffs"), by and through counsel, for their First Amended Complaint against Defendant, Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen"), state as follows:

### I. INTRODUCTION

1.      Defendant, a mortgage servicer and debt collector, has engaged in willful, malicious, harassing, coercive, and deceptive actions against Plaintiffs in furtherance of its efforts to illegally collect a debt Plaintiffs did not owe, as it had been paid through, and discharged as a result of, Plaintiffs Chapter 13 bankruptcy. Specifically, Defendant sent Plaintiffs post-discharge billing statements and correspondences on the subject account to coerce or deceive them to make payments on the paid and discharged debt and reported inaccurate, negative information to credit reporting agencies regarding Plaintiffs and the Account to be reported on Plaintiffs' credit reports.

2.      Specifically, Plaintiffs claim Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) Plaintiffs' common law privacy rights; and 3) the discharge injunction of the United States Bankruptcy Court for the Eastern

District of Texas, Sherman Division. Plaintiffs also bring a defamation claim and declaratory judgment action against Defendant. Plaintiffs seeks to recover actual, statutory, punitive damages, and legal fees and expenses from Defendant, as well as injunctive relief and a declaration from the Court.

## II. Parties

3.     Plaintiffs are natural persons residing in Denton County, Texas and "consumers," as defined by the TDCA, Tex. Fin. Code § 392.001(1).

4.     Defendant is a foreign limited liability company and has made an appearance in this case by filing its Original Answer on April 15, 2019. (Doc. 8).

5.     Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

6.     The debt Defendant was attempting to collect from Plaintiffs was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

7.     Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

## III. Jurisdiction and Venue

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367 and 15 U.S.C. § 1681p.

9.     Venue is proper in this district, because Defendant transacts business in this district, Plaintiffs filed their bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. Factual Allegations

**A.      The Inclusion and Discharge of the Subject Debt in Plaintiffs' Bankruptcy Case.**

10.      On November 2, 2012, Plaintiffs filed a Chapter 13 bankruptcy in case number 12-42960 ("Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court").

11.      On **"SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS"** ("Schedule D") filed with their bankruptcy petition, Plaintiffs listed the subject Account or Loan Number xxxxx9819 ("the Account") as a secured claim and debt, secured by a second lien on real property located at 227 Diane Dr., Sanger, Texas 76266 (the "Property"), identifying Defendant's principal or predecessor in interest Gmac Mortgage ("GMAC") as the creditor for the Account. Plaintiffs also listed Defendant as the creditor for a first lien mortgage account ending in xxxxxx4451, also secured by the Property.

12.      The Property was listed in Plaintiffs' **"SCHEDULE A – REAL PROPERTY"** filed with their petition as a single, family residence.

13.      Relevant excerpts from Plaintiffs' Schedule D are attached hereto as Exhibit "A."

14.      On or about November 2, 2012, Plaintiffs filed their Chapter 13 Plan ("Plan") in their Bankruptcy Case; the Plan, in relevant part, provided for Plaintiffs' payment of the balance on the Account in its entirety, in monthly installments, paid to the bankruptcy Chapter 13 Trustee to be distributed to GMAC.

15.      A copy of the relevant excerpts from Plaintiffs' Chapter 13 Plan are attached hereto as Exhibit "B" and incorporated herein by reference.

16.      On or about November 15, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), by first class mail to GMAC. The 341 Notice warned all creditors,

in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362. The United States Postal Service did not return the 341 Notice sent to GMAC, creating a presumption it was received by GMAC.

17.    On or about January 29, 2013, GMAC filed a proof of claim on the Account in the Bankruptcy Case for the amount of $11,804.11.

18.    A copy of the Proof of Claims is attached hereto as Exhibit "C."

19.    On or about February 21, 2013, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Entry of Order Confirming Chapter 13 Plan and Related Orders" ("Confirmation Order"), by first class mail to GMAC. The United States Postal Service did not return the Notice sent to GMAC, creating a presumption it was received by GMAC.

20.    A copy of the Confirmation Order is attached hereto as Exhibit "D" and incorporated herein by reference.

21.    On a date currently unknown to Plaintiffs, Defendant acquired from GMAC the rights to service and collect on the Account, but, on or about May 13, 2013, Defendant filed in the Bankruptcy Case its "NOTICE OF APPEARANCE AND REQUEST FOR DUPLICATE NOTICE COMBINED WITH REQUEST FOR ALL COPIES PURSUANT TO BANKRUPTCY RULE2002(a), (b) AND PLEADINGS PURSUANT TO BANKRUPTCY RULES 3017(a) AND 9007 ("Ocwen's Notice of Appearance").

22.    A true and correct copy of Ocwen's Notice of Appearance is attached hereto as Exhibit "E" and incorporated herein by reference.

**B.    The Subject Debt Was Discharged as to Plaintiffs' Personal Liability in Their Bankruptcy Case.**

23.    During the pendency of Plaintiffs' Bankruptcy Case, the entire amount of the claim on the Account, $11,804.11, was paid by Plaintiffs in accordance with the Plan, along with interest

in the amount of $3,407.45. The Chapter Bankruptcy Trustee acknowledged this in his Trustee's Final Disbursements form, which reflects Plaintiffs' payment of the entire claim amount of $11,804.11, along with interest in the amount of $3,407.45.

24.     On February 8, 2018, the Bankruptcy Court issued an Order of Discharge granting Plaintiffs a discharge ("Discharge Order"). The Discharge Order followed Official Form 3180W, including the explanatory language contained therein. The Discharge Order discharged Plaintiffs from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

25.     On February 9, 2018 and February 10, 2018, the Bankruptcy Noticing Center sent an electronic transmission to Defendant and first class mailing to GMAC, respectively, notifying them about the entry of the Discharge Order. These transmissions, which were not returned, constituted notice of the discharge granted in Plaintiffs' Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. § 524(a).

26.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "F."

27.     At no time during the pendency of Plaintiffs' Bankruptcy Case did GMAC, Defendant or any other person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedules "A" and "D" to Plaintiffs' Petition.

28.     At no time did Plaintiffs reaffirm the debt on the Account with any person or entity.

29.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**C.      Defendant has Attempted to Collect the Satisfied Discharged Debt from Plaintiffs.**

30.     Despite Plaintiffs' payoff of the Account in accordance with the Plan and the change in the legal status of the Account after Plaintiffs received their bankruptcy discharge, which, by operation of law, made the debt legally uncollectible from Plaintiffs personally and, in effect, closed the Account, Defendant engaged in debt collection activity against Plaintiffs personally on the Account by: (1) sending Plaintiffs correspondence and statements on the Account and (2) reporting inaccurate negative information to the CRAs about Plaintiffs and the Account to coerce or deceive them to pay the subject discharged and/or paid debt on the Account.

**1)      Post-Discharge, Defendant Sent Plaintiffs Correspondence and at least 8 Statements to Collect on the Discharged Debt.**

31.     After Plaintiffs' discharge in their Bankruptcy Case, and after Plaintiffs had paid off the entire amount of the debt on the Account during their Bankruptcy Case, Defendant sent Plaintiffs at least eight (8) billing statements and one (1) letter on the Account, attempting to collect and/or to coerce or deceive Plaintiffs to make payment(s) on the Account.

32.     On or about June 1, 2018, Defendant sent Plaintiffs a "Mortgage Account Statement" ("06/01/18 Mortgage Statement"), stating "Payment Due Date: 12/01/22" and "Amount Due $95.53," noting "[i]f payment is received after 12/16/22, a $4.49 late fee may be charged." The **Account Information** section of the Statement reflects a "Principal Balance" of $8,046.66 and a "Maturity Date" of "July 1, 2036." The Statement, in a section entitled "**Explanation of Amount Due***," states "Principal $23.66," "Interest $66.22," "Total Regular Payment $89.88, "Past Due Fees/Other Charges $5.656," and "Total Amount Due $95,53." The detachable, self-addressed "Payment Coupon" has printed on it: "**AMOUNT DUE** $95.53" and

"[i]f late charge assessed af2)ter 12/16/22, add late charge of $4.49," and a "Total Amount Due with Late Charge (if assessed) $100.02." The payment coupon also has blank boxes for Plaintiffs to fill in amounts submitted for "Additional Principal," "Additional Escrow," "Late Charges and Fees," "<u>Other Additional Payments</u>," and the "Total Enclosed."

33.     A redacted copy of the 06/01/2018 Mortgage Statement is attached hereto as Exhibit "G" and incorporated herein by reference.

34.     On or about June 9, 2018, after the full amount of the claim on the Account had been paid by Plaintiffs through the Plan and after the Plaintiffs had received their bankruptcy discharge, Defendant sent Plaintiffs a debt verification letter titled **"VERIFICATION OF MORTGAGE ACCOUNT"** ("06/09/2018 Account Verification Letter") advising Plaintiffs of the account terms and providing them documentation of the mortgage payment history ("Payment History"), showing an "Ending Balance" as of 03/01/2018 for "Principal" in the amount of "$9,105.00" and "Late Charges $197.56."

35.     Redacted copies of the 06/09/2018 Account Verification Letter and Payment History are attached hereto as Exhibit "H" and incorporated herein by reference.

36.     Mortgage Statements virtually identical to the 06/01/2018 Mortgage Statement were sent to Plaintiffs by Defendant on at least the following dates: 08/01/2018, 09/03/2018, 10/01/201, 11/01/18, 12/03/2018, 01/01/2019, and 02/01/19.

37.     Redacted copies of the 08/01/2018, 09/03/2018, 10/01/201, 11/01/18, 12/03/2018, 01/01/2019, 02/01/19, 04/01/19 and 05/01/19 Mortgage Statements are attached hereto as Exhibits "I" through "Q," respectively, and incorporated herein by reference.

**2)     Post-Discharge, Defendant Furnished False, Negative Information to the Credit Reporting Agencies on the Account to be Reported on Plaintiffs' Credit Reports in Furtherance of its Harassment and Illegal Collection Activity.**

38.     After the debt on the Account had been paid in full and after Plaintiffs had received a discharge in their Bankruptcy Case, Defendant furnished false, derogatory information about the Account status and payment history to be reported on Plaintiffs' credit reports as follows:

1)      On or about April 30, 2018, Defendant reported to Equifax, for inclusion on Plaintiffs' credit reports, the "Account Status" was "CHARGE_OFF," the "Charge Off Amount" was "$10,265," the "Date of Last Payment" was "Feb 01, 2018," and there was a "Reported Balance" of "$8,070." As of June 7, 2018, this information was still being reported on Plaintiffs' Equifax Credit Reports;

2)      On or about April 30, 2018, Defendant reported to TransUnion for inclusion on Plaintiffs' credit reports, the "Pay Status" was "Charged Off," the "Original Charge Off" amount was "$10,265," the "Date of Last Payment" was "02/19/2018," and there was a "Balance" of "$8,070." As of June 7, 2018, this information was still being reported on Plaintiffs' TransUnion Credit Reports;

3)      On or about July 31, 2018 and again on October 31, 2018, Defendant reported to Equifax on the Account to be reported on Plaintiffs' credit reports, reporting "Account Status" was "CHARGE_OFF," "Charge Off Amount $10,265," "Balance $8,052," "Amount Past Due $8,052," and "Date of Last Payment" was "May 01, 2018." As of December 28, 2018, this information was still being reflected on Plaintiffs' Equifax Credit Reports; and

4)      On or about July 31, 2018, Defendant reported to TransUnion for inclusion on Plaintiffs' credit reports, the "Pay Status" was "Charged Off," the "Original Charge Off" amount was "$10,265," the date of "Last Payment Made" was "05/10/2018," and as of July 2018, there was a "Balance" and "Past Due" amount of "$8,052." As of September 25, 2018, this harmful and inaccurate information was still being reported on Plaintiffs' TransUnion Credit Reports.

39.     Relevant and redacted copies of Mr. Bell's June 7, 2018, September 25, 2018 and December 29, 2018 Equifax Credit Reports are attached hereto as Exhibits "R" "S" and "T" and Mrs. Bell's June 7, 2018, September 25, 2018 and December 28, 2018 Equifax Credit Reports are attached hereto as Exhibits "U," "V," and "W," respectively, and incorporated herein by reference.

40.     Relevant and redacted copies of Mrs. Bell's June 7, 2018 TransUnion Credit Report

and Mr. Bell's September 25, 2018 TransUnion Credit Report are attached hereto as Exhibits "X" and "Y," respectively, and incorporated herein by reference.

41.     In furtherance of its efforts to collect on the Account, Defendant failed to report accurate information or update and correct its inaccurate, negative credit reporting to Equifax and TransUnion at issue.

42.     Defendant's false, negative reporting to the CRAs and its failure to correct and update this information was a breach of its duties to provide accurate information to the CRAs under FCRA, 15 U.S.C. §1681s-2(a), which provides that furnishers of information to the CRAs have a duty to provide accurate information to them and to correct and update information that is not complete or accurate and shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information that is necessary to make the information provided by the person to the agency complete and accurate.

43.     At all relevant times, Defendant knew how to report to the CRAs that a debt was included in and/or discharged in bankruptcy. However, by reporting that the Account has been charged off, that Plaintiffs continue to owe a balance on it, and that the Account is past due, after Plaintiffs paid the debt on the Account in full and after Plaintiffs received their bankruptcy discharge, Defendant is misrepresenting to Plaintiffs and third parties viewing Plaintiff's credit reports showing this harmful and incorrect information that Plaintiffs did not pay a legal obligation they had on the Account. A third party who obtains a copy of Plaintiffs' credit reports reflecting this harmful information may assume Plaintiffs are still liable for the subject discharged debt or that they have a very negative credit reputation and are a severe credit risk and to not extend credit to them, when, in fact, Plaintiffs paid the Account in full.

44.     Moreover, Defendant was legally and contractually required to furnish accurate information to the CRAs and to update and correct any incorrect information it had reported to the CRAs that was being reported on Plaintiffs' credit reports.

45.     Plaintiffs believe that, after reasonable discovery, they will be able to show Defendant intentionally and maliciously furnished false, derogatory information to the CRAs to be reported on their credit reports in accordance with its policies, procedures and practices, as stated hereinabove, when it knew: the debt on the Account had been paid in full and was discharged, and it could not legally attempt to collect the subject debt from Plaintiffs personally.

46.     Plaintiffs believe that, after reasonable discovery, they will be able to show that, at all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but Defendant has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to properly furnish accurate information to the CRAs and to update and correct any inaccurate information it has reported to them, in general, and with regard to the Account and Plaintiffs, specifically.

47.     Plaintiffs believe that, after reasonable discovery, they will be able to show Defendant has a policy and procedure to refuse to properly furnish and update information it furnishes to the CRAs to be reported on credit reports of consumers, like Plaintiffs, to show that accounts in bankruptcy that have been paid in full through Chapter 13 plans are still owing or have been charged off and are past due with outstanding balances, and to not report that discharged debts have been discharged in bankruptcy. The purpose of Defendant having these policies is to keep false information on the credit reports of these consumers to incorrectly and negatively represent that discharged debts on which Defendant is attempting to collect are still due and owing;

-10-

this false information consists of a past due balance shown as owing, even though the underlying debts have been paid or discharged.

48.     At all relevant times, Defendant has known that once a debt is paid in full through a Chapter 13 plan or an account is discharged in bankruptcy, there can be no balance owed on such account by the respective consumers, and the account is closed by operation of law. Nevertheless, Defendant still attempts to collect on these accounts *in personam* when they are legally uncollectible  by intentionally furnishing false, negative information to the CRAs to be reported on the respective discharged consumers' credit reports, all the while knowing this is prohibited by law because Defendant knows that by reporting this type of negative information on discharged consumers' credit reports will increase its chances of illegally collecting on the paid, discharged debts.

49.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant reports and updates information it furnishes to the CRAs on hundreds or thousands of accounts each month, but has willfully and maliciously refused to properly update and correct the inaccurate, derogatory information it has reported on the subject Account showing on Plaintiffs' credit reports and others' accounts for debts paid through Chapter 13 plans and that have been discharged in bankruptcy upon which Defendant is attempting to collect.

50.     Plaintiffs believe that, after reasonable discovery, they will be able to show Defendant promised, through its subscriber agreements or contracts with the CRAs, to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of false, negative information being reported on credit reports as to debts paid

through Chapter 13 plans and discharged, in furtherance of its attempts to collect the legally uncollectible debt, including, but not limited to, Plaintiffs' credit reports at issue.

51.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has a policy to "park" false information on accounts with debt paid through Chapter 13 plans and discharged in bankruptcy on the discharged debtors' consumer credit reports with at least one of with the CRAs. The term "parking" is a term in the industry meaning keeping a false balance (or false account) on individuals' consumer credit reports so that the consumer will be forced to pay off the purported balance in order to qualify for a loan and obtain financing or refinancing, or to increase the consumers' credit scores from the artificially lowered score, which directly resulted from the creditors' intentional and malicious conduct of reporting false information or not reporting correct information to the credit bureaus.

52.    In the context of "parking" an account, Defendant has a contractual duty, coupled with an obligation and duty under state and federal law, to accurately report the balance on such accounts, but Defendant willfully and maliciously ignores its contractual duties and refuses to obey applicable law.

53.    Defendant knows that "parking" an incorrect balance on accounts whose underlying debts have been discharged in bankruptcy will lead to false and defamatory information being published every time a consumer's credit report is accessed and reviewed by a person or entity, such as Plaintiffs' credit reports at issue, and this is the malicious and intentional design behind Defendant's actions at issue, with the goal to force discharged consumers, such as Plaintiffs, to pay discharged debts.

54.    Here, Plaintiffs' credit reports have been accessed by third-parties numerous times since Defendant reported its false, negative information; therefore, the false information Defendant

furnished on the Account has been published to numerous third-parties – which is what Defendant calculated and intended to happen.

55.      When a consumer who has discharged debt on an account pays the debt on such "parked" account, Defendant will claim that such payment was purely "voluntarily" or was to pay off a "moral obligation." Defendant, however, knows that by willfully and maliciously "parking" discharged debt on consumers' credit reports for accounts on whose debts Defendant is trying to collect, illegal payment can be extorted from innocent and unassuming consumers, including Plaintiffs.

56.      Plaintiffs believe that, after reasonable discovery, they will be able to show that despite Defendant receiving dozens, if not hundreds, of account disputes regarding this type of false credit reporting, Defendant continues to report false, negative information to the CRAs on accounts paid through Chapter 13 plans that are discharged in bankruptcy, and Defendant intentionally and knowingly has not corrected its policies of keeping false and damaging information from being reported and updated correctly on these consumers' credit reports, including, but not limited to, Plaintiffs' credit reports at issue.

### V. GROUNDS FOR RELIEF - COUNT I
### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

57.      Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs, as if rewritten here in their entirety.

58.      Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

  a.      Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from threatening to take an action prohibited by law, because the bankruptcy discharge injunction prohibits attempting to collect, *in personam*, debts discharged in bankruptcy;

-13-

b.    Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiffs' debt, because Defendant's post-discharge notices and letters at issue, and the inaccurate and incomplete information Defendant reported to the CRAs, misrepresents that Plaintiffs owe the paid and discharged debt; and

c.    Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt; for the same reasons stated in the preceding paragraphs a. and b., Defendant was trying to coerce or deceive Plaintiffs to pay the subject debt, when Defendant knew the debt was included in and paid in full through Plaintiffs Chapter 13 Plan and discharged in bankruptcy, which made it legally uncollectible from Plaintiffs.

59.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue make it liable to Plaintiffs for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiffs' injuries resulted from Defendant's malice and/or actual fraud, which entitles Plaintiffs to punitive damages.

60.    Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting this claim.

### VI. GROUNDS FOR RELIEF - COUNT II
### INVASION OF PRIVACY

61.    Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing Paragraphs, as if rewritten here in their entirety.

62.    Defendant's conduct, as described hereinabove, when it made harassing and illegal contacts with Plaintiffs through its post-discharge written correspondences and statements at issue, constituted invasions of Plaintiffs' private affairs. These invasions were ones that would be highly offensive to a reasonable person, because Defendant was forbidden by law to contact Plaintiffs at any time regarding the subject debt on the Account, since the debt had been paid and discharged as to Plaintiffs' personal liability during their Chapter 13 Bankruptcy Case, and because Plaintiffs were protected by the discharge injunction after their discharge. Plaintiffs had a reasonable basis

-14-

to believe they would have such privacy and that their privacy rights would not be invaded by Defendant in furtherance of its *in personam* collection attempts and harassment related to the Account.

### VII. Grounds for Relief - Count III
### Violation of the Bankruptcy Discharge Injunction

63.     Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing Paragraphs, as if rewritten here in their entirety.

64.     At all material times, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and of the payment of the debt on the Account and Plaintiffs' bankruptcy discharge, but Defendant, nevertheless, attempted to collect from Plaintiffs personally on the discharged debt, as evidenced by Defendant sending Plaintiffs letters and billing statements and reporting inaccurate, negative information on the Account to the CRAs be reported on Plaintiffs' credit reports for Plaintiffs and third parties to view, as part of its orchestrated attempt to coerce or deceive Plaintiffs to make payment on the paid and discharged Account.

65.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiffs, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiffs to pay the paid and discharged debt. Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiffs' Bankruptcy Case, the Plan, Plaintiffs' payments on the Account made through the Plan, Plaintiffs' bankruptcy discharge, and the effect of Plaintiffs' discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

66.     The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a paid and discharged debt from Plaintiffs personally, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

67.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in Plaintiffs' Bankruptcy Case. After this prima facie showing by Plaintiffs, the duty falls on Defendant to show, as its only permitted defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any other defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

68.     Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived…."

69.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

70.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

71.     Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

72.     Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII. Grounds for Relief – Count IV
### Defamation

166.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 10 through 56 above, as if rewritten here in their entirety.

167.     Defendant provided statements of fact about Plaintiffs post-discharge with regard to their credit capacity, credit reputation, credit history, credit score and outstanding debt concerning the subject Account to be published through Equifax and TransUnion.

168.     Defendant may be held liable for the CRAs republication of the false and defamatory statements about Plaintiffs concerning the Account because Defendant's actions created a reasonable risk that the defamatory matter would be communicated to other parties

by Equifax and TransUnion.

169.    The published statements at issue on Plaintiffs' credit reports were false.

170.    The published statements were defamatory, as the false statements constituted an invasion of the Plaintiffs' interests in their reputation and good names.

171.    The publication of such false statements of fact about Plaintiffs, their credit reputation, credit capacity, credit score, and credit and payment history concerning the Account post-discharge was done with actual malice and/or willful intent to injure Plaintiffs.

172.    Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.

173.    Defendant acted with actual malice and/or willful intent to injure Plaintiffs because Defendant willfully provided for publication of false information regarding Plaintiffs, his payment history and liability on the Account, and the status of the Account post-discharge, with knowledge of the falsity of such information, including, but not limited to, the fact Defendant participated in Plaintiffs' Bankruptcy Case by filing Ocwen's Notice of Appearance and knew the debt on the Account was paid through the Chapter 13 Plan and then discharged as to Plaintiffs' personal liability.

174.    Defendant's publication of the false information at issue on Plaintiffs' credit reports at issue to Plaintiffs and other third-parties was also done with reckless disregard for the truth.

175.    Defendant's malice may be inferred from the fact that Defendant continually published false and misleading information regarding Plaintiffs with regard to the Account post-discharge, Plaintiffs' payment history on the Account, credit reputation, credit capacity and outstanding liabilities post-discharge to Equifax and TransUnion by reporting false,

derogatory information to Equifax and TransUnion about the Account and Plaintiffs on multiple occasions.

176.    Defendant provided for publication of the defamatory information both before and after notification of the falsity of such information. Additionally, each time the false statements were presented to a third party, in the form of credit inquiries or account reviews, a new publication occurred.

177.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Defendant's publication of defamatory statements.

178.    Plaintiffs are entitled to actual damages as a result of Defendant's publication of defamatory statements.

## IX. GROUNDS FOR RELIEF – COUNT V
## REQUEST FOR DECLARATORY RELIEF

179.    Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs Nos. 10 through 56 above, as if rewritten here in their entirety.

180.    As outlined in the preceding counts and the preceding factual allegations, Defendant has violated the Bankruptcy Code. Plaintiffs seek a declaration that Defendant's post-discharge erroneous credit reporting on the Account with Equifax and TransUnion concerning the Account and the discharge of the debt on the Account as to Plaintiffs' personal liability, violates the Bankruptcy Code, the discharge order, and the discharge injunction.

181.    Plaintiffs are entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act.

## X. *RESPONDEAT SUPERIOR* AND VICARIOUS LIABILITY

73.     Plaintiffs believe that, after reasonable discovery, they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of Defendant, the principal, within the course and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## XI. REQUEST FOR INJUNCTIVE RELIEF

166.     Plaintiffs repeat, re-allege and incorporate by reference Paragraphs Nos. 10 through 56 above, as if rewritten here in their entirety.

167.     As set forth above, Defendant violated the discharge injunction by reporting the inaccurate, negative information regarding the status of the Account as to Plaintiffs and by failing to report information about Plaintiffs' bankruptcy and discharge of the debt on the Account, as evidenced by the information reported on the tradeline for the Account on Plaintiffs Equifax and TransUnion credit reports, relevant excerpts of which are attached hereto as Exhibits "P" through "V," and incorporated herein by reference.

168.     The actions of Defendant show that it is its policy and procedure to ignore the directives and orders of the Bankruptcy Court and the Bankruptcy Code.

169.     Plaintiffs are entitled to an injunction requiring Defendant to correct wrongful credit reporting, and to otherwise remedy the adverse effects on Plaintiffs from Defendant's illegal actions.

170.     Title 11 U.S.C. § 105 of the Code grants power to the Court to remedy the harms caused by Defendant's violations of the Code and orders of the Bankruptcy Court. Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate

to facilitate implementation of Code, including the granting of sanctions for contempt, injunctive relief, monetary relief for actual damages, including attorneys' fees and costs.

171.    Therefore, Plaintiffs seek injunctive relief that includes appropriate monetary sanctions, including payment of attorneys' fees and costs, for Defendant's violations as described herein.

172.    Plaintiffs also seek that the Court award Plaintiffs injunctive relief with regard to Defendant's erroneous reporting of the Account to Equifax and TransUnion pursuant to § 392.403(a)(1) of the TDCA.

## XII. DAMAGES

74.    In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiffs past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiffs' emotional state; and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendant's actions has cost Plaintiffs' time and mental energy, which are precious to them.

75.    Defendant's actions at issue have caused and/or exacerbated Plaintiffs' negative emotions and mental anguish and distress, and have caused and/or amplified the return of Plaintiffs' array of negative emotions and distress of having to file and go through bankruptcy, and have caused and/or exacerbated new fears, stress, worry, frustration, uncertainty, anger, fear, defensiveness and anxiety to such a degree to negatively impact their physical well-being and day-to-day life, causing and/or exacerbating Plaintiffs' headaches, insomnia, depression, chest pains abdominal pains, cramping, panic attacks and marital discord.

76.    At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally

collectible from the debtors personally, but Defendant made a corporate decision, knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been paid in full and discharged as a result of Plaintiffs' Bankruptcy Case.

77.    Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiffs, with the actual knowledge that such actions were in violation of the law.

78.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

79.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

80.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiffs' injuries resulted from

Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiffs to recover punitive damages.

81.    Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Ronald Ray Bell and Bonnie Louise Bell, pray the Court:

A.    Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, Plaintiffs' common law privacy rights, the bankruptcy discharge injunction, defamation, and for their declaratory relief sought;

B    Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs and award such damages to Plaintiffs;

C.    Award Plaintiffs the injunctive relief sought by their claims;

D.    Find that the declaration sought by Plaintiffs is just and merited and issues such declaration and related damages;

E.    Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

F.    Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Respectfully submitted,


*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Plaintiffs' First Amended Complaint has been mailed by certified mail, return receipt requested, and by electronic transmission to counsel of record for Defendant, Ocwen Loan Servicing, LLC, by and through its counsel of record, Vincent J. Hess, Locke Lord LLP, 2200 Ross Avenue, Suite 2800, Dallas, TX 75201, vhess@lockelord.com and to Arthur E. Anthony, aanthony@lockelord.com, by electronic transmission, on the 23d day of October, 2019.

　　　　　　　　　　　　　　　 _/s/ James J. Manchee_____
　　　　　　　　　　　　　　　 James. J. Manchee